IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

———————————

No. 02-60352
Summary Calendar

———————————

JIA-ZHONG LIU,

                                                                Petitioner,

versus

JOHN ASHCROFT, U.S. ATTORNEY GENERAL,

                                                                Respondent.

_____

Appeal from the
Board of Immigration Appeals
(No. A78 296 613)
_____
January 16, 2003

Before REAVLEY, BARKSDALE and CLEMENT, Circuit Judges.

PER CURIAM:[*]

        Petitioner Jia-Zhong Liu claims that Chinese family-planning officials persecuted

him for violating that nation's one-family/one-child rule, and on that basis, and on what he

argues is a well-founded fear of future persecution, seeks asylum in the U.S.  The

_____

        [*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should
not be published and is not precedent except under the limited circumstances set forth in
5TH CIR. R. 47.5.4.

immigration judge concluded that he had not proven persecution or a well-founded fear of the same, and ordered him removed to China. The Board of Immigration Appeals affirmed. We hold that the immigration judge erred in not considering all substantial evidence of Ja-Zhong's wife's alleged involuntary sterilization and the effect of such evidence on his asylum claim. We therefore reverse and remand.

## BACKGROUND

Ja-Zhong and his wife, Li-Yo, had their first child in September 1990, shortly after which Li-Yo was ordered to have a contraceptive device implanted. The couple wanted to have more children, however, and about a year later Li-Yo had the device removed. Li-Yo became pregnant for a second time in February 1992, and fearing reprisal from Chinese family-planning officials, moved to another town to live with Ja-Zhong's cousin, leaving their firstborn to live with Ja-Zhong's father. The couple's second child was born in November 1992. Two years later, Li-Yo became pregnant for a third time. Ja-Zhong testified that family-planning officials learned of the third pregnancy, and ordered that Li-Yo undergo an abortion. The couple was also fined 5,000 yuan.[1]

In December 1994, on the way to visit her mother, Li-Yo was arrested and ordered sterilized. Li-Yo's health was precarious, however, so the officials ordered that Ja-Zhong be sterilized instead. When Ja-Zhong did not show up for the procedure, family-planning officials ransacked his house, and destroyed his furniture and other personal belongings.

---

[1]      One U.S. dollar equals about eight yuan.

2

Wanting to avoid sterilization, Ja-Zhong moved around China for a number of years before entering the U.S. in 2001. After arriving here, Ja-Zhong learned that his wife had been sterilized, having again been discovered by family-planning officials while visiting her mother. Ja-Zhong no longer fears sterilization for himself.

Ja-Zhong was taken into custody upon his arrival in the U.S. on February 7, 2001. He was charged with making material misrepresentations to enter the U.S., 8 U.S.C. § 1182(a)(6)(C)(i), and entry without valid documents, id. § 1182(a)(7)(A)(i). He made his first appearance before an immigration judge in April 2001 in El Paso, Texas. In May of the same year, Ja-Zhong, represented by counsel, petitioned for asylum, 8 U.S.C. § 1158, and for withholding of removal under the Immigration and Nationality Act ("INA"), id. § 1231(b)(3), and the United Nations Convention Against Torture ("CAT"), 8 C.F.R. § 208.16(c). The government subsequently withdrew its misrepresentations charge. On November 28, 2001, the immigration judge conducted a merits hearing, during which Ja-Zhong was again represented by counsel.

On December 6, 2001, the immigration judge denied relief in a 22-page opinion. In her opinion, the judge determined that the "testimony of respondent was for the most part on point." However, the judge also noted that Ja-Zhong "frequently . . . answer[ed] . . . question[s] by 'first' restating his prior testimony concerning family planning in China," and thus "gave the appearance of having 'rehearsed' his testimony." Moreover, the judge found that Li-Yo was released within hours of being arrested by family-planning officials; that documentary evidence of Li-Yo's sterilization did not prove that

3

the procedure was done involuntarily; that Ja-Zhong and Li-Yo traveled freely in China and appeared in public with both of their children; and that Ja-Zhong had made no attempt to leave China following the birth of his second child until 2001.[2] The judge further found that much of Ja-Zhong's documentary evidence was of dubious authenticity.

Based on the foregoing findings, the immigration judge determined that Ja-Zhong had failed to establish persecution or a well-founded fear of future persecution, and was therefore ineligible for asylum. Not having established an entitlement to asylum, the judge also determined that withholding was unwarranted under either the INA or CAT, both of which require greater proof of fear of persecution than asylum does. Ja-Zhong was ordered removed to China. The Board of Immigration Appeals ("BIA"), in a two-page order, dismissed Ja-Zhong's appeal, but noted that Ja-Zhong had explained some of the inconsistencies in his documents. Otherwise, the BIA accepted the findings and conclusions of the immigration judge. Ja-Zhong made a timely appeal of the BIA's decision to this court. He contends, among other things, that the immigration judge's credibility findings are unfounded, and that the judge erred in not considering his wife's affidavit.

---

[2] The judge also concluded that it was "highly implausible" that Li-Yo's mother would have let Li-Yo visit if family-planning officials there presented a danger; that other family members would have offered the couple assistance if officials presented a threat; and that those family members that did help were not harassed or threatened by family-planning officials despite living openly with the couple.

## DISCUSSION

This court is authorized to review a final order of removal. See 8 U.S.C. § 1252(b). Because the BIA accepted the findings and conclusions of the immigration judge, we must review those findings and conclusions ourselves. See Mikhael v. I.N.S., 115 F.3d 299, 302 (5th Cir. 1997). The immigration judge's "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." See 8 U.S.C. § 1252(b)(4)(B). We may not review decisions resting solely on a determination of the petitioner's credibility. See Chun v. I.N.S., 40 F.3d 76, 78 (5th Cir. 1994) (per curiam). Ja-Zhong has not appealed the immigration judge's determination of his eligibility under CAT.

At the outset, we note that to establish an entitlement to asylum Ja-Zhong must prove that he is a "refugee." See 8 U.S.C. § 1158(b)(1). A "refugee" is

> any person . . . unable or unwilling to return to . . . [his home] country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion . . . . [A] person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive population control program, shall be deemed to have been persecuted on account of political opinion, and a person who has a well[-]founded fear that he or she will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance shall be deemed to have a well[-]founded fear of persecution on account of political opinion . . . .

Id. § 1101(a)(42). The BIA has determined that an alien whose spouse was forcibly sterilized has also suffered persecution and is presumed to have a well-founded fear of future persecution. See In re C-Y-Z-, 21 I. & N. Dec. 915, 918-19 (1997), available at

5

1997 WL 353222. Such an alien is entitled to asylum unless the government can show changed conditions in the alien's home country or that the government has already admitted 1,000 similarly-situated refugees that year. See id. at 919-20.[3] Zhao v. United States Department of Justice, 265 F.3d 83 (2d Cir. 2001), involved facts very similar to In re C-Y-Z-. There, Zhao's wife was ordered to undergo sterilization following the birth of the couple's second child. Id. at 87. Zhao resisted and was fined, but the immigration judge concluded that he had failed to show past persecution. The Second Circuit held that the immigration judge's failure to explain why Zhao had not shown past persecution under In re C-Y-Z- evidenced a lack of rationality in the application of agency standards. Id. at 95. It therefore remanded for further proceedings and reconsideration in light of In re C-Y-Z-.

The immigration judge in In re C-Y-Z- accepted as true the petitioner's claim about his wife's sterilization, 21 I. & N. Dec. at 916, as did the immigration judge in Zhao regarding Zhao's claim about his wife, 265 F.3d at 94. Here, the immigration judge noted only that "[t]he existence of medical records relating to [Ja-Zhong's wife's] sterilization does not automatically require a finding under the circumstances of this case that such sterilization was [] involuntary . . . ." Elsewhere in her opinion, the

_____

[3] See also 8 C.F.R. § 208.13(b)(1) ("An applicant who has been found to have established . . . past persecution shall also be presumed to have a well[-]founded fear of persecution on the basis of the original claim."); 8 U.S.C. § 1157(a)(5) ("For any fiscal year, not more than a total of 1,000 refugees may be admitted . . . for resistance to coercive population control methods[].").

6

immigration judge called Ja-Zhong's telling of events "rehearsed" and not "spontaneous or free-flowing," and, with respect to particular testimony, "highly implausible" and "lack[ing] in credibility." No such language was used, however, with respect to Ja-Zhong's claim about his wife's sterilization. Further, the immigration judge never referenced Li-Yo's affidavit, in which she states that she "was dragged to [the] Birth Control Office to have [an] abortion operation," and in December 1994 was "dragged to have [a] sterilization operation." While we do not require that the immigration judge "address evidentiary minutiae or write any lengthy exegesis, its decision must reflect meaningful consideration of the relevant substantial evidence supporting the alien's claims." Abdel-Masieh v. I.N.S., 73 F.3d 579, 585 (5th Cir. 1996) (citation omitted). Moreover, in light of Ja-Zhong's reliance on In re C-Y-Z- and Zhao in his opening brief and the seeming factual similarity between those decisions and the case at bar, it is perplexing that neither the immigration judge nor the government's brief so much as cite them. Patently inconsistent outcomes in factually similar cases is a hallmark of arbitrary and capricious decisionmaking. See S. Shore Hosp., Inc. v. Thompson, 308 F.3d 91, 103 (1st Cir. 2002); Zhao, 265 F.3d at 95. In view of In re C-Y-Z-, and in the absence of a determination regarding Ja-Zhong's credibility on the question of his wife's sterilization, we hold that it was error not to consider Ja-Zhong's wife's affidavit. If on remand the

7

immigration judge finds that Ja-Zhong's wife was involuntarily sterilized, the judge

should consider Ja-Zhong's asylum claim in light of the BIA's decision in <u>In re C-Y-Z-</u>.[4]

## CONCLUSION

The immigration judge's order of removal is REVERSED and the case

REMANDED.[5]

---

[4]    Because we are remanding Ja-Zhong's asylum claim, we also remand his withholding claim.  <u>See</u> <u>Mikhael</u>, 115 F.3d at 306.

[5]    We find that Ja-Zhong's remaining arguments regarding the immigration judge's credibility determinations are either without merit or irrelevant.